## A95A0776. ROONEY v. THE STATE.
### (459 SE2d 601)

Pope, Presiding Judge.

We granted John Thomas Rooney's application for interlocutory appeal to consider whether a superior court judge erred in reconsidering, and subsequently revoking, the pretrial bond set by another judge, who was presiding in the superior court judge's place by designation. Under the facts of this particular case, we conclude that no error occurred because the designated judge should not have granted bond to Rooney after expressly finding that he was likely to intimidate witnesses or otherwise interfere with the administration of justice.

The Gwinnett County police arrested Rooney, and a magistrate formally charged him with rape, aggravated sodomy, aggravated sexual battery, burglary and battery. The magistrate set bond in the amount of $25,000 on each of the charges of aggravated sexual battery, burglary and battery. The magistrate did not, however, set bond on the rape and aggravated sodomy charges because only a superior court judge has the authority to do so. See OCGA § 17-6-1 (a) (3), (4).

On October 6, 1994, Rooney filed a petition for bond in the Superior Court of Gwinnett County. The matter was assigned to Judge James Oxendine, and a hearing was scheduled for October 20, 1994. On the day of the hearing, Judge Oxendine was out of town. Rooney admits, however, that Judge Oxendine had delegated authority to hear the matter to Gwinnett County Recorder's Court Judge Michael Greene pursuant to OCGA § 17-6-1 (h). Neither party disputes that Judge Greene's designation was appropriate, nor does either party contend that his designation was made pursuant to OCGA § 15-1-9.1 (e). Thus we reject the dissent's assertion that a copy of the actual order designating Judge Greene must be obtained before a decision can be reached in this case.

During the bond hearing, Judge Greene heard testimony from Rooney and two witnesses for the State. The State's first witness was Investigator Lorraine Jackson. She testified that her investigation showed that Rooney had forced his way into a woman's home. When the woman resisted Rooney's aggressions, Rooney became enraged. Rooney took the woman into the bathroom and forced her to perform oral sodomy on him. He then sodomized her with a tube of toothpaste. Thereafter, Rooney took the woman into her bedroom where he allegedly beat her with a belt and raped her. The woman later identi-

fied Rooney as her attacker in a photographic lineup.

The State's second witness, Billy Davis, testified that he was in a holding cell with Rooney. According to Davis, Rooney approached him about having the woman that accused him of rape "done in" during a carjacking. Davis said Rooney told him the woman's name. He also testified that Rooney later told him that Rooney might try to pay the woman off.

After the bond hearing, Judge Greene issued a written order, dated October 21, 1994, wherein he specifically found that there was a substantial risk that Rooney would intimidate witnesses or otherwise interfere with the administration of justice. Nonetheless, Judge Greene set bond in the amount of $50,000 on each of the rape and aggravated sodomy charges. Additionally, he ordered that the rape bond be "cash only." Judge Greene did not disturb the bonds previously set by the magistrate.

On November 7, 1994, the State filed a motion for reconsideration. Judge Oxendine held a hearing on the State's motion on November 14, 1994. During this hearing, Rooney presented no evidence, and the State only recalled Davis, who in essence gave the same testimony that he previously had given. At the hearing's conclusion, after considering Davis's testimony, the transcript of the hearing before Judge Greene and argument from both sides, Judge Oxendine granted the State's motion. By order dated November 14, 1994, he revoked the rape and aggravated sodomy bonds. Judge Oxendine specifically stated in his order that there was evidence that Rooney raped and sodomized the victim and that there was a risk that Rooney would intimidate witnesses if released on bond. It is undisputed that Rooney had not made bond prior to the time the State filed its motion for reconsideration.

In his sole enumeration, Rooney contends that Judge Oxendine lacked the authority to reconsider Judge Greene's order and that Judge Oxendine erred when he vacated the order and denied bond on the rape and aggravated sodomy charges. We disagree.

Contrary to Rooney's assertion otherwise, this is not a case where one superior court judge has reconsidered and vacated another superior court judge's order. In this case, Judge Greene merely was presiding over a matter pending before Judge Oxendine's court. Moreover, any authority Judge Greene had was given to him by Judge Oxendine. Consequently, any order Judge Greene issued must be viewed as coming from Judge Oxendine's court. Having said this, we hold that the authority to reconsider and subsequently vacate any such order was within Judge Oxendine's sound legal discretion.

We reject the dissent's position that Judge Oxendine lacked the authority to entertain the State's motion for reconsideration merely because the motion was filed on the first day after the expiration of

the term of court in which Judge Greene originally issued his bond order. See OCGA § 15-6-3 (20). Although the dissent relies on *Pledger v. State*, 193 Ga. App. 588 (388 SE2d 425) (1989) in support of such a proposition, *Pledger* is distinguishable from the case at bar because it did not involve the reconsideration of a bond order. Moreover, we do not consider the issuance of a bond order to be an "interlocutory ruling" of the type contemplated in *Pledger*. Therefore, *Pledger* is not controlling here. To hold otherwise would be the equivalent of setting bond orders in stone after the expiration of the term in which they are entered. We also note that neither of the parties to this appeal argues that expiration of the court term precluded Judge Oxendine from reconsidering Judge Greene's initial order.

Upon review of the record, including the transcripts from both the bond and motion for reconsideration hearings, we conclude that Judge Oxendine did not abuse his discretion in reconsidering Judge Greene's order. "[A] trial court may release a person on bail *if the court finds the person*: (1) Poses no significant risk of fleeing from the jurisdiction of the court or failing to appear in court when required; (2) Poses no significant threat or danger to any person, to the community, or to any property in the community; (3) Poses no significant risk of committing any felony pending trial; and (4) *Poses no significant risk of intimidating witnesses or otherwise obstructing the administration of justice.* OCGA § 17-6-1 (e)." (Emphasis supplied.) *Ayala v. State*, 262 Ga. 704, 705 (1) (425 SE2d 282) (1993). Here, Judge Greene made no such finding. To the contrary, he specifically found that Rooney posed a substantial risk of intimidating witnesses and otherwise interfering with the administration of justice. Because of this finding, Judge Greene should not have granted bond to Rooney.

In denying bond upon reconsideration, Judge Oxendine sufficiently set forth his reasons for doing so in his order, as is required by the Supreme Court's holding in *Lane v. State*, 247 Ga. 387, 389 (276 SE2d 644) (1981). Because we find no manifest or flagrant abuse of discretion in his decision, we affirm. See *Jernagin v. State*, 118 Ga. 307, 308 (45 SE 411) (1903).

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Andrews, Johnson, Blackburn and Ruffin, JJ., concur. Beasley, C. J., dissents. Smith, J., not participating.*

BEASLEY, Chief Judge, dissenting.

I respectfully dissent. The court was not authorized to entertain the motion for reconsideration because it was filed on the first day of the next term, when the court could not act on it. The pretrial bond order was entered on October 26, during the September term of the court. OCGA § 15-6-3 (20). The next term commenced on November

7, the first Monday of November 1994. Id. The State's motion for reconsideration was filed on that day, and the court acted on it on November 15.

As in *Pledger v. State*, 193 Ga. App. 588 (2) (388 SE2d 425) (1989), both of these filings were of no effect because the pretrial bond order had become "upon the roll" and was not subject to review or revision by the trial court. *Gobles v. Hayes*, 194 Ga. 297, 300 (21 SE2d 624) (1942). In criminal cases the inherent power of the court to vacate or modify its orders ceases with the term's end, *Pledger*, supra at 589, likewise in civil cases. *Bank of Cumming v. Moseley*, 243 Ga. 858 (257 SE2d 278) (1979). *Pledger* noted that if the proceedings to vacate or modify are begun during the term in which the original order or judgment is entered, the court would be authorized to act. See *Bowen v. State*, 239 Ga. 517, 518 (2) (238 SE2d 62) (1977). Here the proceeding was begun on the first day of the new term, too late to extend the court's authority into the new term. As in *Pledger*, so in Rooney's case, this applies to the interlocutory order just as it would apply to a final judgment. The trial court's order of November 15 must be reversed. The State's remedy was to file a motion to revoke bond.

Even if the order were efficacious, I would be compelled to dissent because we could not reach the conclusion contained in the majority opinion. In fact, we could reach no conclusion at all.

The record before us does not contain the order designating Judge Greene to act in this matter. Appellant contends in his brief that Judge Greene, a judge of the Recorder's Court of Gwinnett County, was designated pursuant to OCGA § 17-6-1 (h). It permits the superior court judge by written order to "delegate the authority" to rule on the issue of bail in certain cases "to any judge of any court of inquiry within such superior court judge's circuit." This delegation may be made in the discretion of the superior court judge even though the same statute expressly excludes from courts of inquiry the issue of bail for offenses such as rape and aggravated sodomy. OCGA § 17-6-1 (a) and (b). Thus the legislature relegated the question of who should decide the bail issue to the superior court judges, to determine on a judge-by-judge basis "[e]xcept in cases in which life imprisonment or the death penalty may be imposed." OCGA § 17-6-1 (h).

OCGA § 17-6-1 (h) further provides that "[t]he written order delegating such authority shall be valid for a period of one year, but may be revoked by the superior court judge issuing such order at any time prior to the end of that one-year period." If Judge Greene was acting pursuant to such an order, there is no apparent reason why the motion for *reconsideration* of the order he issued could not come before him. This assumes that such a motion was valid in the first place and

that the Gwinnett Recorder's Court is a court of inquiry.

On the other hand, the State contends in its brief that Judge Greene was sitting by designation pursuant to OCGA § 15-1-9.1 (l). Although subsection (l) does not apply because it relates to requests for assistance by "any judge other than a superior court judge," Judge Greene could have been designated to assist under OCGA § 15-1-9.1 (e). The written designation would include the specific assignment, as described in subsection (f), and the assisting judge would be empowered under subsection (g) to "discharge all the duties and . . . exercise all of the powers and authority of a judge of the court in which he is presiding." That would seem to include ruling on the motions for reconsideration of the assisting judge's own orders, but perhaps in this case that was not embraced. We do not have the written designation. All we have from the record is the statement at the beginning of the hearing on October 20 before Judge Greene, in which an assistant district attorney said, "This is a miscellaneous calendar before the Honorable James W. Oxendine, Honorable Michael C. Greene will be presiding today." Judge Oxendine had set this matter by rule nisi issued on October 11. Statements about the facts which are not supported by the record, particularly when they are at odds, cannot be considered. Court of Appeals Rule 27 (b) (1); *Behar v. Aero Med Intl.*, 185 Ga. App. 845, 846 (1) (366 SE2d 223) (1988).

There is thus a question about the existence and extent of Judge Greene's authority which is material to the enumeration of error pending before us. The question would be resolvable by reference to a more complete record. Were it not necessary to reverse the order because it was not authorized for the reason first given, we should by order require the trial court to transmit to this Court the document authorizing Judge Greene to act. OCGA § 5-6-48 (d). An expedited basis would be in order because the appellant is incarcerated, OCGA § 5-6-43 (c), and because this interlocutory appeal is delaying the final judgment on the charges.

We do not need that order, however, because Rooney must be permitted to make the bond as set by Judge Greene.

DECIDED JULY 13, 1995.

*Ronnie K. Batchelor*, for appellant.

*Daniel J. Porter, District Attorney, Phil Wiley, Assistant District Attorney*, for appellee.